UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIM SAY, | No. 2:14-cv-0496 CKD |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. For the reasons discussed below, the court will grant plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for summary judgment, and remand this matter for further proceedings.

BACKGROUND

Plaintiff, born June 9, 1952, applied on October 29, 2010 for DIB and SSI, alleging disability beginning October 1, 2008. Administrative Transcript ("AT") 140-150, 153-154. Plaintiff alleged she was unable to work due to leg problems, depression and anxiety. AT 159. In

/////

1

a decision dated March 13, 2012, the ALJ determined that plaintiff was not disabled.[1]  AT 17-27.

The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity since October 1, 2008, the alleged onset date.
>
> 3. The claimant has the following medically determinable impairments: depression, anxiety, obesity and mild degenerative joint disease of the right knee.
>
> 4. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work related

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76,  416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

1
2
3
4

>activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments.
>
>5. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2008 through the date of this decision.

5  AT 19-26.

6  ISSUES PRESENTED

7  Plaintiff argues that the ALJ erroneously found that plaintiff did not have a severe

8  impairment at step two of the sequential analysis, and in so doing, improperly rejected the

9  opinions of a treating psychiatrist and consulting physicians.

10  LEGAL STANDARDS

11  The court reviews the Commissioner's decision to determine whether (1) it is based on

12  proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

13  as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

14  evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

15  F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

16  mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

17  Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is

18  responsible for determining credibility, resolving conflicts in medical testimony, and resolving

19  ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

20  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

21  rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

22  The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th

23  Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

24  conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not

25  affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see

26  also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

27  administrative findings, or if there is conflicting evidence supporting a finding of either disability

28  or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

Plaintiff contends the ALJ improperly assessed the severity of her impairments. An impairment or combination of impairments is deemed to be severe at step two if it "significantly limits [plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a). Basic work activities encompass "the abilities and aptitudes necessary to do most jobs," including "(1) physical functions such as walking, standing, sitting, lifting and carrying, (2) capacities such as seeing, hearing, and speaking, (3) understanding, carrying out, and remembering simple instructions, (4) use of judgment, (5) responding appropriately to supervision, co-workers, and usual work situations, and (6) dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). An impairment is "not severe" only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28. The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987). "The step-two inquiry is a de minimis screening device to dispose of groundless claims. An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Smolen v. Chater 80 F.3d 1273, 1290 (9th Cir. 1996); see also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001). Impairments must be considered in combination in assessing severity. 20 C.F.R. § 404.1523.

At step two of the sequential evaluation, the ALJ found that plaintiff had medically determinable impairments of depression, anxiety, obesity and mild degenerative joint disease of the right knee. However, the ALJ concluded that these impairments are not severe. In determining that plaintiff's mental impairments were not severe, the ALJ accorded "minimal" weight to the opinion of plaintiff's treating psychiatrist, Dr. Bonilla, who opined in September

/////

2011 that plaintiff met the listing for "depression."[2] AT 24, 478. At that time, Dr. Bonilla rated as "poor" plaintiff's ability to deal with the public, use judgment, interact with a supervisor, deal with work stress, maintain attention/concentration, understand, remember and carry out even simple job instructions, behave in an emotionally stable manner, or relate predictably in social situations. AT 481-482. In December, 2011, Dr. Bonilla confirmed his assessment of plaintiff's poor ability to engage in several work related activities, but upgraded to "fair" plaintiff's ability to deal with the public, understand, remember and carry out simple job instructions, and relate predictably in social situations; the remaining categories previously rated as poor were still assessed as poor in December. AT 485-486. In support of his assessment, Dr. Bonilla set forth clinical findings of plaintiff having a sad and depressed affect, anxious about the future, tearful, withdrawn and soft speech. AT 484. Dr. Bonilla noted at that time that plaintiff's response to treatment was "modest" and that her prognosis was "guarded." At 484.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d

---

[2] Although not specifically referenced in Dr. Bonilla's report, it appears the reference to the "depression" listing was Listing 12.04 (Affective Disorders).

1035, 1041 (9th Cir. 1995) (citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); <u>see also</u> <u>Magallanes</u> , 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  <u>Lester</u>, 81 F.3d at 831.

  The ALJ rejected Dr. Bonilla's opinion as inconsistent with the treatment notes.  Upon review of the entire record, the court concludes that the ALJ's articulated reasons for according minimal weight to Dr. Bonilla's assessment are not supported by the record.[3]  The Kaiser treatment records indicate plaintiff was prescribed psychotropic medication as early as June 2008 due to an assessment of generalized anxiety disorder.  AT 290.  Plaintiff was seen at several appointments thereafter in 2008 and 2009 and was treated for stress, anxiety, fatigue, and malaise, reporting symptoms of palpitations, sweating, nervousness, dizziness and insomnia.  AT 296, 298, 300, 302, 308-310.  In September 2009, plaintiff was offered a referral to mental health but she declined the referral at that time.  At 323-324.  In November 2009, plaintiff was again seen for anxiety and stress at which time the nurse practitioner who saw her discussed stress reduction techniques.  Plaintiff again declined referral to the mental health department, indicating that she had supportive relatives to whom she could talk.  AT 331.  Treatment records indicate that in 2010, plaintiff was generally seen for physical complaints.

  By February 2011, plaintiff accepted the offered mental health referral.  AT 438.  At that time, plaintiff presented with complaints of anger/violence, depressed mood, crying spells, significant appetite change, insomnia, irritability, decreased energy, hopelessness, decreased

---

[3] Dr. Bonilla's conclusory opinion that plaintiff meets the Listing for depression was properly rejected. However, with respect to the different functional areas assessed by Dr. Bonilla, contrary to the ALJ's summary, the treatment record does not support a finding that plaintiff's mental impairment would have no more than a minimal effect on plaintiff's ability to work. On remand, if the ALJ determines that minimal weight should be accorded to the <u>degree</u> of limitation assessed by Dr. Bonilla, the reasons set forth by the ALJ for the weight accorded that opinion must be specific and legitimate and supported by the record as a whole. Adopting the opinion of an examining physician who has not been provided any medical records, as the ALJ did here, does not fulfill the ALJ's duty.

concentration, and suicidal ideation. At 438. Plaintiff also had panic attacks including shortness of breath, palpitations, choking sensation, chest pain, sweating, chills and nausea. On mental status exam, plaintiff was noted to be tearful, guarded, pressured, depressed and with short-term memory impairment. AT 441. She was referred to individual and group psychotherapy and was seen by psychologist Dr. Pham pursuant to that referral on February 17, 2011. AT 444. On mental status exam, Dr. Pham noted plaintiff's mood as depressed and that plaintiff had suicidal ideation. AT 444-445. In February 2011, the records indicate plaintiff was prescribed Sertraline (Zoloft) for her depression; the dosage was increased in March 2011 at which time plaintiff reported feeling better but "still sad over her current family and financial situation." AT 495, 502. Plaintiff was attending "Managing Depression" classes at that time and continued to do so. AT 502, 510 (May 16, 2011 "Managing Depression Series").

In August, 2011, plaintiff requested treatment for depression at the Fresno[4] Kaiser facility because she was living part time with a friend in Fresno. Plaintiff reported frequent crying, lack of energy and feeling hopeless on a daily basis. AT 571. At the psychiatric intake evaluation performed by Dr. Bonilla at the Fresno Kaiser facility on August 31, 2011, plaintiff reported that she was not suicidal but "wishes she would die." AT 567. Mental status exam indicated that plaintiff was tearful, withdrawn, soft speech, depressed mood and restricted affect. AT 567. Plaintiff reported she was recently not compliant with her Zoloft prescription but that even when she took the medication, there was no significant improvement. AT 568. Dr. Bonilla concluded at that time that "[d]espite medication and treatment [plaintiff] will remain depressed and anxious unless her situation changes which doesn't seem likely or any time soon." AT 568. The Sertraline prescription was again increased. AT 569. In December 2011, Dr. Bonilla's mental status examination of plaintiff indicated psychomotor retardation, sad and withdrawn demeanor, soft speech and depressed and anxious mood. AT 560. It was recommended at that time that she take the Sertraline on a daily basis and that she follow up with her treating psychiatrist in Stockton because she was returning to Stockton to live with her son. AT 561-562. Clinical

---

[4] Plaintiff was previously treated at the Stockton Kaiser facility.

findings similar to those of Dr. Bonilla were made by the psychiatrist plaintiff saw in Stockton in December 2011. AT 530-531.

As summarized above, the treatment records are replete with entries demonstrating that plaintiff had mental impairments significantly limiting her ability to do basic work activities. As such, the ALJ committed error in ending the sequential evaluation at step two.[5] The matter will therefore be remanded for completion of the sequential evaluation.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is granted;

2. The Commissioner's cross-motion for summary judgment (ECF No. 18) is denied; and

3. The matter is remanded for further proceedings consistent with this order.

Dated: February 9, 2015

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

4 say.ss.rem

---

[5] Plaintiff also argues that the ALJ should have found a severe physical impairment because the state agency physicians found plaintiff's osteoarthrosis to be severe. AT 75. Because the court will remand this matter so that the ALJ may proceed with the sequential evaluation, the court need not reach this argument.